UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------- X
                                   :

PATRICK CLARKE, on behalf of himself and all   :
those similarly situated,                         :

                    Plaintiff,         :

                                   :       14-cv-5291 (KBF)

           -v-                    :

                                 :      OPINION & ORDER

HUDSON VALLEY FEDERAL CREDIT UNION,  :

                    Defendant.    :

                                 :
----------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

      On July 15, 2014, plaintiff Patrick Clarke ("Clarke") commenced this action, on behalf of himself and all others similarly situated, alleging that defendant Hudson Valley Federal Credit Union ("HVFCU") violated certain provisions of the Servicemembers Civil Relief Act ("SCRA"), 50 U.S.C. § 3901 et seq.  Specifically, Clarke alleged violations that HVFCU violated 50 U.S.C. §§ 3952 & 3958 when it repossessed his vehicle in 2010 while he was on active duty in the United States military.

      On November 25, 2015, after the completion of discovery and while Clarke's motion for class certification and HVFCU's motion for partial summary judgment were pending, Clarke accepted HVFCU's offer of judgment pursuant to Federal Rule of Civil Procedure 68.[1]  The offer of judgment awarded Clarke, inter alia, a

---

[1] On November 17, 2015, the Court had, in an Order denying Clarke's request for an adjournment of the trial date, notified the parties that it was in the process of drafting a decision denying class certification.  (ECF No. 91.)

sum of $20,000 and "reasonable and necessary attorneys' fees and costs of the litigation accrued to the date" of the offer of judgment.  (ECF No. 94.)

Now before the Court is Clarke's motion for attorney's fees and costs.  (ECF No. 100.)  Clarke's motion, brought on behalf of the two law firms that jointly represented him in this action, seeks attorney's fees in the amount of $194,204.90 and costs in the amount of $13,534.25.  HVFCU opposes the motion, identifying various reasons why the Court should reduce the requested fees and costs.  For the reasons set forth below, the Court agrees that Clarke's award of attorney's fees and costs must be significantly reduced from what Clarke's attorneys request.  The Court reduces the requested fees and costs, in large part, based on its determination that numerous items were not reasonably incurred in relation to the pursuit of Clarke's individual claims, but instead were geared toward the pursuit of a potential class action.  Because the Court is highly skeptical that Clarke would have successfully certified a class in this case (as the Court indicated in its November 17, 2015 Order), fees and costs associated with that pursuit are appropriately excluded from the Court's award of attorney's fees and costs.

For the reasons set forth below, the Court awards Teske, Micko, Katz, Kitzer & Rochel, PLLP, attorney's fees of $77,596.42 and costs of $7,296.14, and awards Bromberg Law Office, P.C. attorney's fees of $23,886.70 and costs of $2,022.49.

I.    LEGAL STANDARDS

     A.    The SCRA

Congress passed the SCRA in 2003 "to provide for, strengthen, and expedite the national defense" by extending certain protections to "servicemembers of the

United States to enable such persons to devote their entire energy to the defense needs of the Nation." 50 U.S.C. § 3902.  The SCRA accomplishes this by providing for "the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of servicemembers during their military service." Id. § 3902(2).  The specific proceedings and transactions that are affected are listed in the rest of the statute.

In relevant part, the SCRA provides that, so long as "a deposit or installment has been paid by the servicemember before the servicemember enters military service," contracts for "the purchase[, lease, or bailment] of real or personal property (including a motor vehicle) . . . may not be rescinded or terminated for a breach of terms of the contract occurring before or during [the servicemember's] military service, nor may the property be repossessed for such breach without a court order." Id. § 3952.  The SCRA provides further that a "person holding a lien on the property or effects of a servicemember may not, during any period of military service and for 90 days thereafter, foreclose or enforce any lien on such property or effects without a court order granted before foreclosure or enforcement." Id. § 3958(a).  As indicated above, Clarke alleged that HVFCU repossessed his motor vehicle, for which he had made at least one payment, and sold it at auction while he was on active military duty without obtaining a court order.  (See First Am. Compl., ECF No. 26.)

The SCRA creates a private right of action in which "[a]ny person aggrieved by a violation" of the statute may "obtain any appropriate equitable or declaratory

3

relief with respect to the violation" and "recover all other appropriate relief, including monetary damages." 50 U.S.C. § 4042(a). The SCRA further provides that a court may award a prevailing plaintiff "the costs of the action, including a reasonable attorney fee." Id. § 4042(b).

In trying to determine what constitutes a reasonable attorney fee under the SCRA, this Court is faced with an issue of first impression. Neither this Court nor the parties in this action have identified any published decision that interprets or provides the standard for an attorney fee award under § 4042(b).[2] Given the absence of applicable precedent, the Court construes the SCRA's fee-shifting provision in accordance with the principles that generally govern such an award with respect to other statutes that provide for fee-shifting for a prevailing party. The Court sets forth the standards that generally govern such an award below.

B.  Reasonable Attorney's Fee

A district court has "considerable discretion" in determining what constitutes a reasonable fee award. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008). In order to determine an appropriate fee award, courts typically start with the lodestar amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461

---

[2] HVFCU cites one case from the Eastern District of Virginia, Gordon v. Pete's Auto Service of Denbigh, 4:08 CV 124 (E.D. Va.), in which the court entered a consent judgment that awarded the plaintiff $29,181 in compensatory damages, $60,000 in punitive damages, and costs and attorney's fees of $55,000. (See Def.'s Opp. Br. 12, ECF No. 105.) Because the parties in Gordon agreed to the amount of fees and costs, the court did not issue a decision explaining the basis for awarding fees and costs in that amount. It is therefore of limited aid in determining whether any special considerations should apply when granting a fee award for a prevailing party under the SCRA.

U.S. 424, 433 (1983)); see also Anthony v. Franklin First Fin., Ltd., 844 F. Supp. 2d
504, 506 (S.D.N.Y. 2012) (explaining that "[t]he Supreme Court recently approved
the lodestar approach over the more discretionary approach that had been adopted
by the 5th Circuit in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–
19 (5th Cir. 1974)").  Counsel for the prevailing party must submit "evidence
supporting the hours worked and rates claimed," and "should make a good faith
effort to exclude from a fee request hours that are excessive, redundant, or
otherwise unnecessary."  Hensley, 461 U.S. at 433-34.  Contemporaneous billing
records are required.  N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711
F.2d 1136, 1148 (2d Cir. 1983); see also Scott v. City of N.Y., 626 F.3d 130, 132 (2d
Cir. 2010) (per curiam).  Such records should "specify, for each attorney, the date,
the hours expended, and the nature of the work done."  Carey, 711 F.2d at 1148.

Expenses and costs incurred in the course of litigation should also be
itemized so that the reviewing court can determine whether each cost was in fact
necessary to the success of the litigation.  See U.S. for Use & Benefit of Evergreen
Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2d
Cir.1996) (refusing to grant the request for photocopying costs because the
requesting party had not itemized the cost).

A reasonable hourly rate is based on "the [current] prevailing market rate for
lawyers in the district in which the ruling court sits."  Anthony, 844 F. Supp. 2d at
507; see also Costello v. Flatman, No. 11 Civ. 287, 2013 WL 1296739, at *4
(E.D.N.Y. Mar. 28, 2013) ("A reasonable hourly rate is 'the rate a paying client

would be willing to pay . . . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'") (alterations in original) (quoting Arbor Hill, 522 F.3d at 190)). "A court may determine the reasonable hourly rate by relying both on 'its own knowledge of comparable rates charged by lawyers in the district,' as well as on 'evidence proffered by the parties.'" Adorno v. Port Auth. of N.Y. & N.J., 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010) (quoting Farbotko v. Clinton Cnty. of N.Y., 433 F.3d 204, 209 (2d Cir. 2005); Morris v. Eversley, 343 F. Supp. 2d 234, 245 (S.D.N.Y. 2004)). The Court should consider the rates charged "by lawyers of reasonably comparable skill, experience, and reputation." Farbotko, 433 F.3d at 208. The burden of proof is on the fee applicant to produce evidence of the relevant market and the rate charged in that market. See Hensley, 461 U.S. at 433; Blum v. Stevenson, 465 U.S. 886, 895 n.11 (1984).

In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour. E.g., Malletier v. Artex Creative Int'l Corp., 687 F. Supp. 2d 347, 360 (S.D.N.Y. 2009) ($540 for partner with 24 years of experience); Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co., 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) ($735 for partner); Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs ., Inc., No. 13-CV-2548, 2014 WL 1303434, at *8-9 (S.D.N.Y. Apr. 1, 2014) ($485 for partner with 16 years of experience). New York district courts have also recently approved rates for law firm associates in the range of $200 to $450 per hour, e.g., Malletier, 687 F. Supp. 2d at 361-62 (noting that associate rates of $390 to $470 "fall at the

very top of the spectrum of reasonable hourly rates for associates," and approving associate rates ranging from $200 to $390.10 as reasonable), and for law firm paralegals in amounts of approximately $200 per hour, e.g., Spring Commc'ns Co. v. Chong, No. 13 Civ. 3846(RA), 2014 WL 6611484, at *8 (S.D.N.Y. Nov. 21, 2014) (collecting cases).

A court may apply an across-the-board reduction to effectuate the reasonable imposition of fees.  See, e.g., Kahlil v. Original Old Homestead Rest., 657 F. Supp. 2d 470, 476 (S.D.N.Y. 2009) ("It is well established that across-the-board reductions are appropriate when billing records are voluminous and numerous billing entries are in dispute."  (internal quotation marks omitted)); Marisol A. ex rel. Forbes v. Giuliani, 111 F. Supp. 2d 381, 389 (S.D.N.Y. 2000) ("[R]ather than reducing a certain number of unreasonably billed hours, the Court will make an across-the-board percentage cut in plaintiffs' fee award as is necessary and appropriate."). Across-the-board reductions in the range of 15% to 30% are appropriate when block billing is employed.  See, e.g., Source Vagabond Sys. v. Hydrapak, Inc., No. 11 Civ. 5379 (CM) (JLC), 2013 U.S. Dist. LEXIS 4853, at *41-42 (S.D.N.Y. Jan. 11, 2013) (collecting cases), adopted as modified by 2013 U.S. Dist. LEXIS 25669 (S.D.N.Y. Jan. 11, 2013).

## II.   DISCUSSION

Clarke was awarded a sum of $20,000 in damages by acceptance of HVFCU's Rule 68 offer of judgment.  In his pending motion, Clarke seeks attorney's fees of $194,204.90 and costs of $13,534.25.

Before further breaking down Clarke's application for fees and costs, the Court pauses to explain how these figures reached such significant proportions. From beginning to end, this was a hard fought litigation on both sides. It is clear to the Court that Clarke's attorneys geared up for a big case from the outset, expending resources substantially beyond that which was necessary or reasonable to recover Clarke's individual damages. Instead, Clarke's attorneys were preparing for a "big" case on behalf of a putative class for which the potential recovery could have been far greater. As the Court has stated, that approach was ill conceived— had Clarke not accepted HVFCU's offer of judgment, Clarke's motion for class certification would have been denied and he would have had to proceed to trial on an individual basis. But, in response to Clarke's attorneys' efforts, HVFCU responded as they had to, defending against the significant resources they faced. This approach to the litigation, initiated by Clarke's counsel, is what led to unnecessarily high fees that are on a different order of magnitude than Clarke's recoverable damages.

Returning to Clarke's request, out of the total amounts for which he asks, Clarke seeks $148.124.90 in fees and $8,757.06 in costs for the work performed by the law firm of Teske, Micko, Katz, Kitzer & Rochel PLLP ("Teske"). Teske's sought attorney's fee award is calculated based on a total of 382.45 hours of work performed by four attorneys, who billed at an hourly rate of between $300 and $400, and a total of 41.7 hours of work performed by one secretary and two paralegals, who billed at an hourly rate of between $75 and $85. (Teske Decl. ¶ 61, ECF No.

103.)  In her declaration in support of Clarke's motion for fees, Vildan A. Teske states that her firm is not seeking fees for an additional total of 213.6 hours (with a corresponding charge of $52,178) of work performed  in relation to class certification.  (Teske Decl. ¶¶ 63-64.)  Teske's application for costs includes charges for, inter alia, court reporters, transcripts, travel, court fees, copies and legal research.  (Teske Decl. ¶ 66.)

HVFCU primarily challenges Teske's fee request on the basis that there are "numerous billing discrepancies, instances of double billing and overbilling, [and] billing for internal meetings."  (Def.'s Opp. Br. at 6-7.)  HVFCU also argues that Teske's costs should be significantly reduced because much of what is requested should be absorbed by Teske as overhead or excluded as unnecessarily incurred. (Def.'s Opp. Br. 10.)  HVFCU argues that Teske's fees and costs should each be reduced by at least 50%.

Clarke also seeks $46,080 in attorney's fees and $4,777.19 in costs for the work performed by his local New York counsel, the Bromberg Law Office, P.C. ("Bromberg").  Bromberg's sought attorney's fee award is based on 102.2 hours of work that Mr. Bromberg performed at a rate of $400 per hour, and 20.8 hours of time that Mr. Bromberg's associate, Jonathan Miller, performed at a rate of $250 per hour.  (Bromberg Decl. ¶¶ 36, 41, ECF No. 104.)  Bromberg's fee calculation excludes 17.5 hours of time that Mr. Bromberg performed in relation to Clarke's motion for class certification and 3.3 hours of time that Mr. Miller billed for telephone calls in which he was one of a number of Clarke's attorneys on the line.

(Bromberg Decl. ¶¶ 36, 45-46.)  Bromberg's application for costs includes charges for, inter alia, court fees, delivery services/messengers, transcripts, and travel expenses.  (See Bromberg Decl., Ex. B, ECF No. 104-2.)

HVFCU challenges Bromberg's fee figure on the basis that Bromberg's "billing reflects numerous unnecessary entries, double billing, and billing for what essentially amounts to internal meetings."  (Def.'s Opp. Br. at 10.)  HVFCU also argues that Bromberg's expenses should also be significantly reduced because many entries relate to unnecessary tasks.  (Def.'s Opp. Br. at 11-12.)  HVFCU contends that Bromberg's fees should be reduced by at least 60% and its costs cut by at least 75%.

A.    Attorney's Fees

In reviewing Clarke's attorney's fee request, the Court is mindful that when the size and scope of a case is misunderstood, the hours of work performed become disproportionate to the task at hand.  As discussed above, Clarke's case was pursued as a major litigation—not as the small one that it actually was.  Thus, the Court accepts the fact that Clarke's attorneys performed the work reflected in their time sheets, but has serious concerns as to whether the work done was necessary to resolution of the real dispute on behalf of Clarke with respect to his individual claims, rather than in pursuit of the class action.

With the foregoing in mind, the Court turns to the lodestar method.  Millea v. Metro-N. R. Co., 658 F.3d 154, 166 (2d Cir. 2011).  To do so, the Court first determines whether the hourly billing rates for Clarke's attorneys is reasonable, and then determines whether Clarke's counsel expended a reasonable number of

hours in pursuit of this action.  Id.  Although the hourly billing rates are not in
dispute, the number of hours reasonably expended is hotly contested.  The Court's
process for determining the reasonable number of hours expended in this case is as
follows.

First, the Court undertakes an itemized analysis of Clarke's attorneys'
contemporaneous billing records (along with the explanations that his attorneys
provided in their declarations filed in support of the pending motion) and excludes
entirely, or reduces on a percentage basis where appropriate, hours that are
attributed to tasks that the Court deems unreasonable, excessive, redundant,
and/or unnecessary based on the facts and circumstances presented in this case.
Second, after removing or reducing such entries, the Court applies an additional
across-the-board percentage reduction to the remaining attorney's fees—which still
contain entries for excessive and unnecessary tasks—because the Court finds this
step necessary to effectuate the reasonable imposition of fees in this case, based on
the facts and circumstances presented here.  Having undertaken these steps, the
Court adopts the resulting lodestar figure, which the Court accepts as a
presumptively reasonable fee in this case.

      1.   <u>Billing Rates</u>

Clarke's two law firms, Teske and Bromberg, have provided billing records
that reflect hourly billing rates of between $250 and $400 for attorneys (ranging
from associates to the firms' founding partners), $75 for a legal secretary, and $85
for paralegals.  Teske's and Bromberg's declarations filed in support of the motion
also provided information regarding the qualifications and experience of the

relevant personnel.  (See Teske Decl. ¶¶ 3-36; Bromberg Decl. ¶¶ 4-34, 39-40.)
HVFCU has not challenged any of these billing rates in its opposition papers, and
the Court finds no reason to question the reasonableness of the attorneys' and staff
billing rates.  The Court therefore accepts these billing rates as reasonable.

### 2.    Hours

In assessing the reasonableness of the number of hours of work that Clarke's
attorneys performed in litigating this matter, the Court observes, at the outset, that
Teske and Bromberg have already excluded 213.6 hours and 17.5 hours,
respectively, for work performed in relation to class certification.[3]  While these
reductions are a step in the right direction (and the Court would have excluded all
of this time in any event), Teske and Bromberg do not go nearly far enough to reach
an attorney's fee figure that a client would be reasonably expected to pay for this
matter.  As the Court previously explained, Teske and Bromberg litigated this case
as a major class action, not as the much smaller suit on behalf of Clarke that it
actually was.  As a result, much of the work performed that, at least facially, does
not relate to class certification was nonetheless incurred because Clarke's attorneys
approached this case with the view that a large class would be certified.  With that
in mind, and before turning to the particular items that must be reduced, the Court
provides some additional explanation of the factors present in this case that guide
the Court's determination of appropriate reductions.

---

[3] As stated above, Bromberg has also excluded 3.3 hours charged for internal phone calls.

In the Court's view, all work properly attributable to, or geared towards, the class certification issue must be excluded from the calculation of hours. The Court considers the class action component of Clarke's case to have been ill conceived. If this case had not been resolved through a Rule 68 offer of judgment, the Court would not have granted Clarke's motion for class certification, as the Court indicated in its November 17, 2015 Order. (ECF No. 91.) While Clarke's fee application has excluded certain entries that were most clearly related to class action issues, a significant portion of the remaining hours billed were related to discovery that was conducted almost entirely for the purpose of certifying a class and obtaining evidence to support the potential class claims.

For the same reasons that work performed to support a class action must be excluded, the Court concludes that a substantial portion of the work performed in relation to the pursuit of punitive damages must also be excluded from Clarke's attorney's fee award. The Court's decision is informed by its view that, if this action proceeded to trial, the Court would have only allowed Clarke to present evidence supporting punitive damages that related most specifically to Clarke's individual facts and circumstances. The Court would not have allowed Clarke to present evidence about various other situations regarding other individual borrowers. In other words, Clarke would not have been permitted to present several "mini-trials" as to numerous other situations not implicated by his direct claims; the Court believes that motions in limine would have easily led to the exclusion of such evidence.

Finally, as explained further below, the Court strongly believes, based on the facts and circumstances presented here, that it would have been excessive for more than one or two attorneys to litigate this case on Clarke's behalf if the issues of class certification and HVFCU's conduct related to other individuals were not part of this case. The use of an excessive number of attorneys was a significant aspect (and important indicator) of Clarke's counsels' gearing up for a major case. The Court's calculation of the hours reasonably expended in pursuit of Clarke's claims takes into account the fact that the case was significantly over-litigated based on Clarke's attorneys' longshot hope for class certification.

With the foregoing principles in mind, the reasonable number of hours expended in pursuit of this litigation is reduced, for purposes of the Court's lodestar calculation, as follows.

First, there are a number of entries clearly and directly relating to class certification that remain in Clarke's fee calculation. Teske's fee computation includes 6.9 hours charged at $300 per hour for researching a standing issue, for a total charge of $2,070. Bromberg's fee computation includes two entries related to class certification issues, totaling 0.9 hours charged at an hourly rate of $400. The Court removes these charges as not attributable to Clarke's individual case, deducting $2,070 from Teske's fees and $360 from Bromberg's fees.

Second, and relatedly, HVFCU argues, and the Court agrees, that most of the work performed in relation to Clarke's opposition to HVFCU's motion for summary judgment should be excluded because the bulk of the work related to class

14

certification issues, rather than to Clarke's direct claims. HVFCU has identified 55.3 hours attributable to work performed by Teske in relation to HVFCU's summary judgment motion, equating to a total billing amount of $16,592.50—the Court reduces this amount by 80%, resulting in a deduction of $13,724. Bromberg's fee computation includes three entries relating to summary judgment briefing, which amount to 1.4 hours charged at a rate of $400 per hour, for a total charge of $560. The Court reduces this figure by 80%, resulting in a deduction of $448.

Third, the Court concludes that many of the discovery-related entries are attributable to issues of class certification and evidence of punitive damages that consist of HVFCU's conduct vis-à-vis individual borrowers other than Clarke. Because, as explained above, work performed for these purposes is not properly attributable to Clarke's individual case (and therefore an individual in Clarke's position would not reasonably be expected to pay for such work), the Court concludes that a significant portion of this work must be deducted from the calculation of reasonable hours. In particular, the Court concludes that a significant portion of the fees relating to the deposition of HVFCU's 30(b)(6) witness is not properly part of any fee award for Clarke's individual suit. As noted in the Teske declaration, "[b]ifurcation of discovery between individual facts and everything else also necessitated the bifurcation of 30(b)(6) depositions," which led to HVFCU's 30(b)(6) witness being deposed four times. (Teske Decl. ¶¶ 52-53.) Although work performed in relation to the November 2014 and January 2015 depositions of HVFCU's 30(b)(6) witness is reasonably attributable to Clarke's

individual claims (but perhaps still excessive), the fees associated with the third and fourth days of HVFCU's 30(b)(6) witness's deposition (in June and July 2015)—including significant travel time—are properly excluded.[4]  The Court calculates that Teske's fees associated with the third and fourth days of the deposition of HVFCU's 30(b)(6) witness, based on 58.55 hours of work performed at various hourly rates, totaled $22,245.  Bromberg's fees associated with the depositions on these dates, based on 13 hours of work performed at an hourly rate of $400, totaled $5,200.  The Court excludes all of these charges from its calculation of fees.

Fourth, although a prevailing party seeking to establish his reasonable fee under a fee-shifting statute may, as a general matter, be awarded fees for time reasonably spent in establishing the entitlement to the fee award, see Gagne v. Maher, 448 F.2d 336, 344 (2d Cir. 1979), the Court finds that Clarke's fee award should not include work performed for such purposes here.  The offer of judgment that Clarke accepted provided for "reasonable and necessary attorneys' fees and costs of the litigation accrued to the date" of the offer of judgment.  (ECF No. 94.)  Thus, any fees relating to work performed in relation to Clarke's motion for attorney's fees—which necessarily occurred after that date—is beyond the scope of fees to which the parties agreed and which Clarke may fairly be entitled to in this case.  The Court further concludes that the number of hours billed for the purpose

---

[4] Even if some portion of the testimony elicited on the third and fourth days of HVFCU's 30(b)(6) deposition was minimally relevant to Clarke's individual claims, the Court finds that such fees are grossly excessive given that this was merely a continuation of a deposition already taken by Clarke's counsel.  This was an example of counsel's over-litigation in pursuit of a "big" case.  The Court would reach a similar reduction if it instead calculated the hours reasonably expended in relation to all four days of the deposition.

of preparing Clarke's fee motion appears to be excessive.  The Court thus reduces Teske's fees by 7.7 hours charged at a $400 hourly rate, for a total of $3,080, and, reduces Bromberg's fees by 6.6 hours charged at a $400 hourly rate, for a total of $2,640.

Fifth, HVFCU identifies numerous entries relating to internal meetings among and between Clarke's attorneys that must be eliminated or reduced because they constitute double billing or are, at the very least, excessive and beyond that which a client would reasonably pay.  As indicated above, it would have been unreasonable for six attorneys from two different law firms to perform work on this case had a class action (and punitive damages of similarly broad scope) not been pursued.  At most, Clarke's individual claims would have called for the work of two attorneys from one firm.  If Clarke's case had been litigated in that fashion, most of these internal meetings would not have occurred.  If they had occurred, a client in Clarke's position would not reasonably have paid for such meetings.  HVFCU identifies entries for internal meetings at Teske (and meetings between attorneys at Teske and Bromberg) totaling 20.4 hours of work performed at various hourly rates, amounting to a total charge of $7,790.  HVFCU similarly identifies, in Bromberg's time sheets, 17.7 hours of entries for communications with Teske, which amounted to a total charge of $7,080.  The Court concludes that all of these charges are unreasonable and must be removed from the Court's calculation of hours reasonably expended.

Additionally, HVFCU identifies a number of other discrete tasks as to which the number of hours billed was excessive given the degree of difficulty and circumstances of this case.  The Court therefore applies what the Court believes to be appropriate percentage reductions to the hours of work performed in relation to these tasks.

First, HVFCU argues that the number of hours of work that Teske performed in relation to the drafting, revision and preparation of the complaint—amounting to 12.9 hours worked at a rate of $400 per hour, for a total charge of $5,160—were excessive in light of the level of difficulty and complexity of this case.  The Court agrees, and reduces this portion of Teske's fee by 60%, resulting in a reduction of $3,096.  See Millea, 658 F.3d at 167 ("[W]hile a district court may not adjust the lodestar based on [the novelty and complexity of a case], it may use th[ose factors] to determine the reasonable number of hours the case requires.").  The Court similarly reduces Bromberg's fees relating to preparation of the complaint— amounting to 1.5 hours worked at a rate of $400 per hour, for a total of $600—by 60%, resulting in a reduction of $360.

Second, Teske performed 11.8 hours of work, at a rate of $350 per hour, preparing responses to HVFCU's discovery demands, which HVFCU argues was excessive because the requests did not require large volumes of document exchanges or research.  The Court agrees that this $4,130 charge is excessive in light of the facts and circumstances of this case, and therefore reduces it by 40%, for a total reduction of $2,478.

Third, HVFCU argues that fees charged in relation to counsels' travel time to and from Clarke's deposition in Texas was unnecessary in light of the availability of videoconferencing. Because the Court does not believe that videoconferencing would have been a fully adequate alternative to in-person attendance at Clarke's deposition, the Court will not exclude these fees in their entirety. However, the Court believes that it was excessive and unnecessary for an attorney from each of Clarke's two law firms to travel to Texas for the deposition. Teske charged $3,920 in relation to travel for Clarke's deposition, and Bromberg charged $3,150. The Court finds it appropriate to reduce each of these figures by 60%, resulting in a reduction of Teske's fees by $2,352, and Bromberg's fees by $1,890.

Based on the Court's exclusion and/or reduction of fees assessed for particular items of work performed as to which the Court was readily able to determine that the number of hours expended were excessive and unreasonable, the Court has reduced Teske's fees from $148,124.90 to $91,289.90, and reduced Bromberg's fees from $46,080 to $28,102. As explained below, these itemized reductions do not capture the full extent of the excessive and unnecessary work performed for which Clarke seeks an award of attorney fees. The Court therefore concludes that it is appropriate to apply an additional across-the-board 15% cut to the remaining fees to allow the Court to arrive at a figure that accounts for a reasonable number of hours of work performed in this action.

The Court's determination that an additional across-the-board cut is appropriate is guided by its belief that—beyond the elimination and/or reduction of

particular items that the Court has identified above—Clarke's counsel significantly over-litigated this case beyond what was reasonably necessary to prove Clarke's direct claims.  In other words, as explained above, a considerable amount of the work performed was done in preparation for a larger class action suit and the pursuit of similarly broad punitive damages—an effort which would not have been successful.  Had the class action avenue not been pursued by counsel, it would have been unreasonable and unnecessary for Clarke's attorneys to proceed in the fashion—and expend the amount of time—that they ultimately did.

For instance, if not for the class action aspect of this case, it would have been unreasonable for six attorneys from two different law firms to work on this matter. It is inevitable that the more attorneys assigned to work on a project, the more work those attorneys will find to do.  As the Court has previously observed, if the size of a case is grossly overestimated, the work performed becomes excessive to the task at hand.  The Court firmly believes that no reasonable individual plaintiff in Clarke's position would pay for the additional costs that inevitably arise when several attorneys from multiple firms work together on behalf of one client.  One or two lawyers would have been more than adequate to handle Clarke's individual claims, and that is all the work for which a client in his position would have reasonably paid.  The numerous entries—and significant number of hours expended—related to legal research of fairly routine issues and review of documents drafted by other of Clarke's attorneys demonstrate that Clarke's counsel litigated this case beyond what would have been reasonably appropriate if no class action had been pursued.

Just as one example, HVFCU observes that Teske performed 10.5 hours of work at a rate of $300 per hour for research of the term "enforce lien" under the SCRA. The Court has little trouble in concluding that such an amount of research, and other similar tasks, would not have been performed if this action involved only Clarke's individual claims from the outset.

The Court's decision to apply an across-the-board cut is also based, in part, on the fact that Clarke's fee award remains several multiples of Clarke's damages recovery. While proportionality analysis is not the governing factor in the determination of reasonable fees under a fee-shifting statutory scheme, see Millea, 658 F.3d at 169, the proportionality of the fees to the plaintiff's recovery is nonetheless a relevant factor under these circumstances where the case was litigated far beyond that which was reasonably necessary to prove Clarke's individual claims. Even after imposing significant reductions for specific items that the Court concludes were unreasonable and excessive, Clarke's total attorney's fee award of $119,391.90 is still nearly six times greater than his $20,000 damages recovery.[5]

Based on the foregoing, and in light of the parties' submissions and the Court's awareness of the facts and circumstances in this case, the Court concludes that an across-the-board reduction of 15% of the remaining fees is appropriate to

---

[5] The Court recognizes that Clarke did receive additional non-monetary relief in accepting HVFCU's offer of judgment, including that HVFCU agreed to contact credit reporting agencies to remove HVFCU's negative information on Clarke's credit report and HVFCU waived any right to the amount Clarke owed under another loan. Even accounting for this other relief, the requested fee award is still grossly excessive in relation to the work that was required to be performed in relation to Clarke's individual claims.

arrive at a reasonable number of hours expended in pursuit of Clarke's claims. As a result, the Court reduces Teske's attorney's fee award from $91,289.90 to $77,596.42, and reduces Bromberg's fee award from $28,102 to $23,886.70. Although these figures are significantly less than what Clarke asks for in his motion, these amounts still do far more than adequately compensate Clarke's counsel for work reasonably performed in relation to this case. If anything, this fee award still errs on the high side of what the Court considers reasonable, and Clarke's counsel is still being compensated for some hard-to-ascertain amount of work performed based on an outsized view of the scope of the case.

> B. <u>Costs</u>

Clarke also seeks costs of $8,757.06 incurred by Teske and $4,777.19 incurred by Bromberg. The Court concludes that these costs must be reduced for several reasons.

First, a significant portion of these costs—including travel-related expenses—were incurred in relation to the June 2015 and July 2015 deposition dates for HVFCU's 30(b)(6) witness. As explained above, these depositions occurred for the purposes of proving potential class claims and punitive damages for conduct unrelated to Clarke's direct claims (evidence which, as stated above, the Court would not have allowed if this case proceeded to trial). Costs related to these depositions must therefore be excluded as unnecessarily incurred. Teske's costs associated with these depositions amounted to $593.50. Bromberg's costs associated with these deposition—for preparation of deposition transcripts—amounted to $1,992.50.

22

Second, a significant portion of Clarke's counsels' costs were incurred in relation to travel for Clarke's deposition, which was held in Texas. Although, as discussed above, it was reasonably appropriate for Clarke to have one attorney appear in-person to defend Clarke's deposition, it was unnecessary and excessive for two attorneys, one from each of Clarke's law firms, to do so. As the Court did with respect to attorney's fees incurred in relation to travel for Clarke's deposition, the Court also reduces costs incurred for such travel by 60% as to each firm. The Court therefore reduces Teske's travel costs for Clarke's deposition from $692.83 to $277.13 (resulting in a reduction of $415.70), and reduces Bromberg's travel costs associated with Clarke's deposition from $1,065.34 to $426.14 (resulting in a reduction of $639.20).

Third, the Court observes that Teske incurred costs of $848.63 associated with the pro hac vice admission of four attorneys to this Court. As the Court has previously explained, it was unnecessary for so many attorneys to perform work on Clarke's individual case. There was certainly no need for more than two attorneys to be admitted pro hac vice for this action. The Court therefore reduces these costs by 50%, to $424.32.

Fourth, Teske's costs include a charge of $27.40 for copying costs for documents related to Clarke's motion for class certification. The Court deducts this charge because costs related to the pursuit of certifying a class should not be attributed to Clarke's individual claims and would not be a cost he would reasonably be expected to pay.

Fifth, Bromberg's charges include a cost of $28 for service on "Sterling InfoSystems' Registered Agent in Albany" that Bromberg agrees was erroneously billed to this action.  (Bromberg Reply Decl. ¶ 4, ECF No. 111.)  The Court therefore deducts this charge from Bromberg's billable costs.

Sixth, Bromberg's list of costs includes a charge of $95 for service of a trial subpoena on Michael DeCoeur more than one week after Clarke accepted HVFCU's offer of judgment.  That charge was not reasonable given the status of the action at that time.  The Court therefore deducts this cost.

Having made the above itemized reductions, Teske's costs are reduced to $7,296.14, and Bromberg's costs are reduced to $2,022.49.  Although the Court believes that it would be within its discretion to apply further across-the-board cuts to these figures because additional expenses—particularly the numerous costs incurred for making copies—appear to have been excessive and unnecessary, the Court declines to do so because it has already sufficiently accounted for these issues in applying the across-the-board reductions to Teske's and Bromberg's attorney's fee awards.

III.    CONCLUSION[6]

For the reasons set forth above, Clarke's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART.  Teske, Micko, Katz, Kitzer & Rochel, PLLP, is hereby awarded attorney's fees of $77,596.42 and costs of

---

[6] The Court has considered the parties' other arguments, and concludes that they are without merit.

$7,296.14.  Bromberg Law Office, P.C. is hereby awarded attorney's fees of $23,886.70 and costs of $2,022.49.

The Clerk of Court is directed to close the motion at ECF No. 100, and to terminate this action.

SO ORDERED.

Dated:      New York, New York
            March 8, 2016

_____
KATHERINE B. FORREST
United States District Judge